DONALD W. GRANT v. WINONA & SOUTHWESTERN RAILWAY COMPANY.[1]

February 14, 1902.

Nos. 12,854—(189).

**Railway Bonds—Foreclosure—Deficiency Judgment.**

The defendant issued its bonds, and secured their payment by a mortgage to a trustee upon its railway. Default was made in the payment of interest. Thereupon the trustee foreclosed the mortgage, declaring the whole mortgage debt due, in an action in the circuit court of the United States, and recovered a personal deficiency judgment against the defendant for the full amount remaining unpaid upon all of the bonds after applying the net proceeds of the mortgaged property in payment thereof. Afterwards the plaintiff, the holder of certain of the bonds, brought this action to recover the balance due thereon. *Held:*

[1] Reported in 89 N. W. 60.

**U. S. Circuit Court—Jurisdiction.**

1. That the circuit courts of the United States in equity have jurisdiction in a foreclosure suit to award a personal deficiency judgment against the defendant.

**Trustee Representative of Bondholders.**

2. The terms of the mortgage authorized the trustee to represent the bondholders, and bind them by the deficiency judgment. Welsh v. First Div. St. Paul & Pac. R. Co., 25 Minn. 314, distinguished.

**Purchasers Put on Inquiry.**

3. The recitals and reference to the mortgage in the bonds were sufficient to put all purchasers thereof on inquiry as to all of the powers conferred by the mortgage upon the trustee as to a foreclosure thereof. Guilford v. Minneapolis, S. Ste. M. & A. Ry. Co., 48 Minn. 560, limited.

**Bar to Action by Single Bondholder.**

4. The deficiency judgment is valid, binds the plaintiff, and is a bar to this action.

Appeal by plaintiff from a judgment of the district court for Winona county, entered pursuant to the findings and order of Snow, J. Affirmed.

*Geo. N. Baxter*, for appellant.

*Thomas Simpson, Brown, Abbott & Somsen* and *F. H. Thatcher*, for respondent.

START, C. J.

This action was commenced March 16, 1900, to recover upon certain bonds and coupons made by the defendant. Two defenses were made: (a) That the bonds and coupons were merged in a former judgment; (b) the statute of limitations. The cause was tried by the court without a jury, resulting in judgment for the defendant upon the merits, from which the plaintiff appealed. The sole question for our decision is whether the facts found by the trial court sustain the judgment.

The here material facts are these: April 2, 1888, the defendant duly executed to the Farmers' Loan & Trust Company of New York City, as trustee (hereafter referred to as the "Trust Company"), a mortgage, which was duly recorded, upon its railway, for the purpose of securing the payment of a series of coupon

bonds which it then proposed to issue. It was provided in the mortgage, among other things, that the bonds were not to exceed $18,500 per mile of the railway which the defendant might construct or acquire; that the bonds should be each for the principal sum of $1,000, payable to bearer on April 1, 1928, with interest at six per cent. per annum, payable semiannually on the first day of April and October in each year, the interest to be evidenced by coupons; that each of the bonds should bear on its face a statement to the effect that it was one of a series of bonds secured by a duly-recorded mortgage, of even date, on the railway of the mortgagor, to the trust company, as trustee, but that no bond was valid unless certified by the trustee to be one of the bonds so secured; that each coupon should have on its face a reference, by number, to the bond to which it might be attached, and that upon each bond the trustee should place its certificate to the effect that it was one of the bonds the payment whereof was secured by the mortgage; that the mortgage security should be for the equal pro rata benefit of all bondholders, without preference; and that in default of payment of the interest on the bonds the trustee might elect to declare the bonds immediately due and payable; that in case of such default the trustee might take possession of all of the mortgaged property, and sell it to pay the bonds and interest, this provision to be cumulative to the ordinary remedy by foreclosure in the courts. And it was in the mortgage further stipulated that for the debt, or bonds secured thereby, the defendant should be liable in personam, and that any deficit after exhausting the mortgage security might be enforced against the defendant company or its other property, but not against its stockholders individually. The defendant also covenanted to and with the trustee, for the benefit of the bondholders, that it would pay all interest on the bonds, and also the principal thereof, according to the terms of the bonds and of the mortgage.

Subsequently to the execution of this mortgage, and pursuant thereto, the defendant issued its bonds, in the form, containing the indorsements and certificates thereby required, to the number of over two thousand, and of the aggregate value of over $2,000,000.

Of these bonds the plaintiff is the bearer of eight, with the unpaid coupons attached, which are the same bonds and coupons described in the complaint. Default was made in the payment of the interest due October 1, 1892, and the default continued for more than six months. Thereupon, and on November 16, 1893, the trustee brought suit in equity in the circuit court of the United States for the district of Minnesota against this defendant, the mortgagor, to foreclose the mortgage. Farmers Loan & Trust Co. v. Winona & S. W. Ry. Co., 59 Fed. 957. The court had jurisdiction of the parties, and the bill of complaint prayed, among other things, for a deficiency judgment against the defendant. The defendant answered, and such proceedings were had in that action that judgment was entered therein on March 19, 1894, for the full amount of the principal and interest of all of the bonds, including those now held by the plaintiff herein. The judgment recited and found that the trustee had duly declared the principal of all of the bonds to be due, and it accordingly adjudged that unless the amount so due should be paid on or before May 1, 1894, the mortgaged premises be sold for that purpose, and, in case there should be any deficiency after applying the proceeds of the sale in payment of the amount so adjudged to be due, the trustee have judgment for such deficiency, and execution therefor. The election of the trustee to declare the bonds to be due, recited in the judgment, was made previous to March 13, 1894. The mortgaged premises were sold pursuant to such judgment, and the amount of the net proceeds thereof applied upon the payment of all of the bonds, pro rata, leaving a deficiency of $1,972,719, for which sum formal judgment was entered, and execution therefor awarded against the defendant and in favor of the trustee on August 15, 1895. The decree further fixed the percentage of the dividend to be paid to bondholders from the proceeds of sale, and provided that the clerk stamp with stencil each bond and coupon upon which payment was made, to wit:

"Dividend of 16 and $^{2009}/_{10000}$ per cent. paid on this indebtedness, and judgment entered for the balance, according to the decree of court.                                              O. B. Hillis,
       Clerk of the U. S. Circuit Court of Minnesota."

The bonds and coupons of the plaintiff were presented to the clerk, and the dividend due thereon under the decree paid, and the bonds and coupons so stamped by the clerk.

Upon the question whether the plaintiff purchased his bonds before or after this indorsement was placed upon them, there is neither evidence nor finding. Neither the plaintiff nor any other bondholder was personally a party to the foreclosure proceedings, or took any actual part therein, other than as here stated. The trial court, as a conclusion of law from these facts, found that the plaintiff's bonds and coupons were merged in the deficiency judgment, and, further, that this action is barred by the statute of limitations. If the trustee did not represent the bondholders so far as to enable it to declare, by reason of the default in the payment of interest, the bonds due, for all purposes, and to bind them by the deficiency judgment, it is clear that this action is not barred. The real question, therefore, is whether the trustee was so authorized, and whether the deficiency judgment is valid and binding upon the plaintiff. It is the contention of the plaintiff that this question must be answered in his favor, for the following reasons:

1. The deficiency judgment is void for the reason that the circuit courts of the United States in equity have not jurisdiction in a foreclosure suit to award a personal judgment for a deficiency in any case. Such was the rule under the old equity practice of the court of chancery, and it was enforced in the federal courts, sitting as courts of equity, until the adoption in 1864 by the supreme court of equity rule 92, which is this:

"In suits in equity for the foreclosure of mortgages in the circuit courts of the United States, or in any court of the territories having jurisdiction of the same, a decree may be rendered for any balance that may be found due to the complainant over and above the proceeds of the sale or sales and execution may issue for the collection of the same, as is provided in the eighth rule of this court regulating the equity practice, where the decree is solely for the payment of money."

This rule expressly authorizes the deficiency judgment here in question. But it is claimed that the rule is invalid, because it

purports to give courts of equity jurisdiction over common-law actions, and thereby deprives a party of his right to a jury trial. The rule was adopted by virtue of R. S. (U. S.) § 917, which authorized the supreme court to make rules regulating the practice in suits of equity.   It is a rule of practice intended to enable courts having jurisdiction of an action, to foreclose a mortgage to give full and complete relief, to the end that a multiplicity of actions may be avoided.   So far as we are advised, this is the first case in which the validity of the rule was ever raised.   It has, however, been given effect in many cases, and assumed to be valid by all courts.   We hold that the rule is valid, and that the court had jurisdiction to render the deficiency judgment in question, and that it is binding upon the defendant and the trustee.

2. But it is urged that the plaintiff in this action is not bound by the judgment, because the trustee had no authority to sue and obtain a personal judgment on the bonds or coupons, and thereby bind the bondholders who were not parties to the action by representation.   The general rule that only those who are parties to a suit are affected by the judgment is subject to well-recognized exceptions.   An action by the trustee to foreclose a railroad mortgage, in so far as it affects the trust property held for the security of the bondholders, is an admitted exception to this general rule. In such an action it is neither necessary nor proper to make the bondholders parties, for, as to the trust property, the trustee, who holds the legal title thereof, is unquestionably their representative; and they will (there being no fraud or collusion) be bound by the result of any action touching the trust property to which the trustee is a party.

It must be assumed in this case, in the absence of any finding to the contrary, that the trustee and the defendant acted in good faith in the foreclosure action, including the taking of the deficiency judgment.   But while the trustee acted in good faith, and was the representative of the bondholders in that action as to the trust property, the precise question here to be decided is whether the trustee was their authorized representative in demanding and obtaining the personal deficiency judgment against

the defendant. If what the trustee did fairly falls within the implied terms of the mortgage, the plaintiff is concluded by the judgment; otherwise not.

We are not, however, to be understood as holding that each bondholder might not bring an action upon his bonds, although the trustee was authorized to take measures to enforce payment of a deficiency after exhausting the security, at any time before the trustee obtains a deficiency judgment. Welsh v. First Div. St. P. & Pac. R. Co., 25 Minn. 314. The plaintiff relies upon the case cited in support of his contention that the trustee in this case had no authority to represent the bondholders, except as to the mortgaged property, with power to declare the bonds due in default in the payment of interest, for the sole purpose of applying the proceeds of a sale of the property to their payment.

The short facts in that case were that an action was brought by the owner of certain past-due coupons, which represented the interest on bonds made by the railroad company, and secured by a mortgage in the form of a trust deed, to trustees, upon its property. The defendant railroad company pleaded in abatement the pendency of a former action brought by the trustee to foreclose the mortgage given to secure the bonds and coupons. A reference to the mortgage, a copy of which is a part of the records of the case in this court, shows that it contained no provisions as to a deficiency after exhausting the trust property. On the contrary, it was assumed that there would be a surplus, and the mortgage provided for its payment to the mortgagor. Nor did it contain any covenant by a mortgagor with the trustee, for the benefit of the bondholders, to pay the principal and interest of the bonds according to the terms thereof and of the mortgage, nor any stipulation that the mortgagor should be liable in personam, and that any deficit after exhausting the security might be enforced against it or its other property. In short, the mortgage created no trust as to the bonds, except to declare them due for the purpose of applying the trust property to their payment.

Such being the provisions of the mortgage in the case cited, the court properly and necessarily held that the pendency of the

action by the trustee was not a bar to the prosecution of the action by the bondholder upon his past-due coupons, for the reason that: As trustee it had no right or authority to enforce payment or collection of the bonds in any other way than that provided in the instrument creating the trust, and that it was confined to realizing upon the security. It could not maintain an independent suit upon the bonds or coupons separate from the mortgage; nor was it entitled in a foreclosure action to any personal judgment against the defendant company, the mortgagor, to be enforced by execution, for any deficiency that might remain after sale and application of the trust property. This was said with reference to the terms of the particular mortgage then under consideration.

Whether the trusts and powers created by that mortgage were the usual ones then provided for in railway mortgages, as the court seems to have assumed, we are not advised. However this may be, it is clear that if the powers and trusts constituted by the mortgage here in question are substantially the same as those considered by the court in the Welsh case, the decision therein is directly in point, and rules this case. On the other hand, if the terms of the two mortgages are substantially different, then that case is not here in point, and the question here to be decided must be treated as one of original impression. That the two mortgages are not substantially alike, but radically different, is apparent from the mere reading of them. The mortgage in this case contains all of the provisions omitted from the mortgage in the former case which we have enumerated; hence we are to inquire, independently of the ruling in that case, whether the terms of the mortgage in this case authorized the trustee to represent and bind the bondholders in asking and securing a deficiency judgment for the amount unpaid on all the bonds. We are unable fairly to construe the mortgage, and give effect to all of its provisions, except upon the basis that it was the intention of all of the parties thereto that, in case of a foreclosure in court, all remedies for the collection of the mortgage debt, whether in rem or in personam, should be exhausted by the trustee in the one action. The covenant with the trustee to pay the bonds—the stipulation

for the personal liability of the mortgagor for the payment of the bonds, and for the enforcement of any deficit after the trustee had exhausted the security—cannot be given full effect by any other reasonable construction. The personal covenant could not have been inserted with a view to its enforcement by the several bond-holders. If such were its purpose, it would be wholly unnecessary, for without it they had such right, but the trustee had not; hence it was inserted to confer such power upon the trustee. This is equally true as to the provision for enforcing a deficit after exhausting the security. This provision necessarily confers the power to deal with the deficit upon the trustee. This avoids the necessity of a multiplicity of suits, and a disastrous race of diligence by the individual bondholders, by substituting therefor the comparatively inexpensive and just plan of extending the trusteeship to the deficit. We accordingly so construe the mortgage and hold that the mortgage authorized the trustee to represent the bondholders in the foreclosure suit, and to take a personal judgment for their benefit for the deficiency after exhausting the security. This conclusion is justified not only by the terms of the mortgage, but by the trend of authority. 5 Thompson, Corp. § 6126; Short, Ry. Mortg. § 483; Shaw v. Railroad Co., 100 U. S. 605; Richter v. Jerome, 123 U. S. 233, 8 Sup. Ct. 106; Beals v. Illinois, M. & T. R. Co., 133 U. S. 290, 10 Sup. Ct. 314.

3. The plaintiff, however, claims that he is a bona fide holder of his bonds, without notice of the terms of the mortgage; hence he is not bound by the deficiency judgment. It is not clear that he is such a holder, for there is neither proof nor finding in the record that he acquired his bonds before the indorsement referring to the deficiency judgment was placed upon them. If this was done before he purchased them, he was thereby fully advised in the premises. Now, when the judgment, the mortgage authorizing it, and the bonds with the indorsement thereon, were received in evidence, it would seem that the burden was upon the plaintiff to show, if such were the fact, that he purchased the bonds prior to the judgment and indorsement, for the supposed fact was peculiarly within his own personal knowledge. But we do not place our conclusion that he is bound by the deficiency judgment upon

this narrow ground, but upon the broader ground that the original reference in the bonds to the mortgage was sufficient to put all purchasers thereof on inquiry as to all of the powers conferred by the mortgage upon the trustee in case of a foreclosure of the mortgage by action. As was well said by the learned trial judge:

"The mere mention of a mortgage security implies a possible foreclosure, and the observance in the foreclosure proceeding of the stipulations in the mortgage and of the rules of law and practice relating to that proceeding; and of these the holder of a bond containing such mention must be held to have notice, and to have assented to them."

Railway bonds and mortgages securing their payment constitute a distinct and special class of securities. Where such a railway bond contains a clear statement that it is one of a series of bonds secured by a mortgage to a trustee upon the property of the railway, every proposed purchaser is thereby advised that if he buys he will be brought into contract relations with his co-bondholders, and that his absolute rights in respect to the foreclosure of the mortgage, or the collection thereby of the principal or interest of his bond, are limited by the provisions of the trust deed and the peculiar nature of the security. Guilford v. Minneapolis, S. Ste. M. & A. Ry. Co., 48 Minn. 560, 51 N. W. 658. This court, in the last case cited, held, in accordance with principle and authority, that, where a series of railway bonds secured by a trust deed bear upon their face a clear reference to the deed, holders of such bonds are put upon inquiry by the recitals therein, and charged with notice of the terms of the deed. The mortgage in that case contained a provision to the effect that no proceedings at law or in equity should be taken by any bondholder to enforce the payment of the bonds unless the trustee refused to act in the premises. The court first held that the recitals in the bonds, which were similar to the bond recitals in this case, were sufficient to charge bondholders with notice of the provision, and that it was binding upon them. But upon reargument the court, without modifying the general rule laid down in the original opinion, held that a mere general reference to the mortgage in the bond was insufficient to advise the bondholder of the provision therein

which was absolutely repugnant to the terms of the bond. This seems to have been the basis of the decision that the recital was not sufficient, for with reference to this matter the court said:

"As it is inconsistent with the absolute obligation which the bond imports on its face, and is not suggested by anything appearing thereon, it would hardly be a fair construction of the instrument to hold that the bond was notice to the holder that his right to bring suit for the interest, when due, was qualified by anything in the trust deed."

Such, however, is not this case, for the terms of the mortgage herein as to its foreclosure by the trustee are not inconsistent with the absolute obligation of the bonds, for they do not affect the right of the bondholder to maintain an action at law upon his bond, except that he cannot do so after the trustee has secured a deficiency judgment thereon. The decision in Guilford v. Minneapolis, S. Ste. M. & A. Ry. Co., supra, as to the sufficiency of the recitals in the bonds, cannot be extended so as to rule this case. Whether the reference in the bonds in this case to the mortgage is sufficient to import into them all of the terms of the mortgage, we need not and do not here decide; but we do hold that it is sufficient to charge the bondholders with notice of all the provisions relating to the foreclosure of the mortgage by the trustee, and that they are binding upon them. Seibert v. Minneapolis & St. L. Ry. Co., 52 Minn. 148, 53 N. W. 1134. It follows that the deficiency judgment taken by the trustee is valid and binds the plaintiff, and that this action cannot now be maintained.

Judgment affirmed.